UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

BRENDA JOHNSON and STEPHEN JOHNSON,

        Plaintiffs,

- against -

DETECTIVE JASON BARR,
DETECTIVE REBECCA H. ASMAN,
DETECTIVE BARRY BROWN, Shield No. 1302,
P.O. "JOHN DOES" 1-10 and
THE CITY OF NEW YORK,

        Defendants.

------------------------------------------------------------------X

14 CV 2540 (RJD) (VMS)

SECOND AMENDED
COMPLAINT AND
JURY TRIAL DEMAND

        Plaintiffs, BRENDA JOHNSON and STEPHEN JOHNSON, by their attorney, ALAN D. LEVINE, ESQ., complaining of the defendants herein, respectfully allege as follows:

## JURISDICTION

        1.    This is a civil action, seeking compensatory damages, punitive damages and attorney's fees.

        2.    This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the fourth and fourteenth amendments to the Constitution of the United States.

        3.    Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343.

## VENUE

        4.    Venue is properly alleged in the Eastern District of New York in that the acts complained of herein occurred within this District.

**JURY TRIAL DEMAND**

5. Plaintiffs hereby demand a trial by jury of all issues in this action that are so triable.

**PARTIES**

6. At all times relevant hereto, plaintiff BRENDA JOHNSON was and is a natural person, resident in the County of Queens, City and State of New York.

7. At all times relevant hereto, plaintiff STEPHEN JOHNSON was and is a natural person, resident in the County of Queens, City and State of New York.

8. At all times relevant hereto, plaintiffs were and are husband and wife.

9. At all times relevant hereto, defendant DETECTIVE JASON BARR (hereinafter "BARR") was and is a natural person, employed as a detective in the 113th Precinct of the Police Department of defendant CITY OF NEW YORK.

10. At all times relevant hereto, defendant DETECTIVE REBECCA H. ASMAN (hereinafter "ASMAN") was and is a natural person, employed as a detective in the 113th Precinct of the Police Department of defendant CITY OF NEW YORK.

11. At all times relevant hereto, defendant DETECTIVE BARRY BROWN, Shield No. 1302 (hereinafter "BROWN") was and is a natural person, employed as a detective in the 113th Precinct of the Police Department of defendant CITY OF NEW YORK.

12. At all times relevant hereto, defendants P.O. "JOHN DOES" 1-10 were and are natural persons, employed as police officers in the 113th Precinct of the Police Department of defendant CITY OF NEW YORK.

13. At all times relevant hereto, defendant CITY OF NEW YORK was and is a municipal corporation, organized and existing pursuant to the laws of the State of New York.

14. The individual defendants are sued in their individual capacities.

## AS AND FOR A CAUSE OF ACTION
### (42 U.S.C. §1983)

15. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "14" hereinabove as if more fully set forth at length herein.

16. At all times relevant hereto, plaintiffs were the owners in fee of their home, which was and is located at 109-20 175th Street, Jamaica, County of Queens, City and State of New York.

17. On or about December 1, 2012, at approximately 10:00 P.M., plaintiffs were having dinner in the kitchen of their home when they heard several loud bangs on the front door of the residence.

18. Plaintiffs got up from their kitchen table and began walking towards their front door.

19. Before plaintiffs could reach the front door, the door was broken open and defendants DOES 1-10 entered.

20. All of the defendants who entered the home were dressed in black military-combat-like outfits and at least several of them were brandishing rifles.

21. The first of the aforementioned defendants to enter the home was holding a large shield.

22. The defendants screamed at plaintiffs to get down on the floor of their home, which both plaintiffs did.

23. One of the individual defendants handcuffed plaintiff STEPHEN JOHNSON.

24. Five defendants proceeded to go upstairs to the second floor of plaintiffs' home, while another five went down into the basement.

25. Defendants BARR and ASMAN, both wearing blue jackets with the word "POLICE" printed on them, now entered plaintiffs' home.

26. One or both of these defendants told plaintiff STEPHEN JOHNSON that they had been informed that there were weapons and stolen property being kept in plaintiffs' residence.

27. Once defendants BARR and ASMAN had come into plaintiffs' home, plaintiffs were taken outside and were kept standing on their front lawn, in full view of onlooking neighbors for approximately twenty minutes.

28. When plaintiffs were allowed back into their house, defendants BARR and ASMAN commented to them that their home seemed "very serene."

29. Defendant BROWN, who is described as a male black with a husky build, approximately 5 feet, 7 inches to 5 feet, 8 inches tall, also entered plaintiffs' home and participated in the aforementioned search.

30. The search of plaintiff's home yielded absolutely nothing of an illegal or unlawful nature.

31. After approximately thirty minutes, all the individual defendants left plaintiffs' residence.

32. Plaintiffs were not told that the individual defendants possessed a search warrant, nor were they shown one.

33. Each plaintiff lost a week from work as a result of the emotional upset caused by the events described hereinabove.

34. As a result of the aforementioned conduct of the individual defendants, plaintiffs suffered a deprivation of their rights to be arrested only with probable cause therefor, to be secure in their home against unreasonable searches, and to due process of law, all guaranteed to them by the fourth and fourteenth amendments to the Constitution of the United States, and, as a result, both suffered extreme mental anguish, requiring treatment for plaintiff BRENDA JOHNSON; endured public humiliation; lost time from their respective employments and incurred expenses for repairing the damage caused to their home by the individual defendants.

35. By reason of the aforementioned unconstitutional and illegal actions taken against them by the individual defendants hereto, plaintiffs demand damages in an amount sufficient to compensate them for their damages as enumerated hereinabove and, in addition, seek punitive damages against the individual defendants, both amounts to be determined at the trial of this action.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT CITY OF NEW YORK (42 U.S.C. §1983)

36. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "35" hereinabove as if more fully set forth at length herein.

37. At all times relevant hereto, defendant CITY OF NEW YORK, acting through its Police Department and through the individual defendants hereto, maintained

policies, practices, customs and usages that were a direct and proximate cause of the unconstitutional conduct alleged hereinabove.

38. In 2003, Raymond Kelly, then the Commissioner of the Police Department of defendant CITY OF NEW YORK estimated that approximately ten percent of the no-knock search warrants obtained by the Police Department of defendant CITY OF NEW YORK each month listed an incorrect address or other incorrect information concerning the subject of the search.

39. Upon information and belief, the figure cited by former Commissioner Kelly is still correct.

40. Upon information and belief, the Police Department of defendant CITY OF NEW YORK fails to properly and adequately train its police officers in how to conduct an investigation aimed at providing the information required to obtain a search warrant.

41. Upon information and belief, the Police Department of defendant CITY OF NEW YORK fails to adequately assess the accuracy of information provided to it by confidential informants for use in obtaining search warrants.

42. Upon information and belief, at all times relevant hereto, the Police Department of defendant CITY OF NEW YORK maintained and maintains no written guidelines on the constitutional prohibitions on preparing inadequate and inaccurate requests for search warrants, including, but not limited to, affidavits in support of such requests.

43. Upon information and belief, at all times relevant hereto, the Police Department of defendant CITY OF NEW YORK failed and refused to enforce compliance with such guidelines as it had promulgated with regard to the constitutional

prohibitions on preparing inadequate requests for search warrants, including, but not limited to, affidavits in support of such requests.

44. At all times relevant hereto, defendant CITY OF NEW YORK knew to a moral certainty that its police officers would be required to execute search warrants and defendant CITY OF NEW YORK empowered them to do so, and, therefore, the need to train its police officers in the constitutional limitations and guidelines with regard to preparing applications for search warrants was obvious.

45. The failures of defendant CITY OF NEW YORK to train its police officers, to evaluate information provided to its police officers by confidential informants, to properly observe and investigate premises for which it intends to seek search warrants, to provide guidelines to its police officers and to enforce such guidelines regarding the constitutional requirements for the preparation of search warrants amounts to deliberate indifference to the rights of persons with whom its Police Department comes into contact.

46. Defendant CITY OF NEW YORK implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs of failing to train its police officers to prepare and/or implement and/or enforce guidelines regarding the constitutional requirements for the preparation of applications for search warrants.

47. By implementing, enforcing, encouraging, sanctioning and/or ratifying the aforementioned policies, practices and/or customs, defendant CITY OF NEW YORK caused plaintiffs to be subjected to an unconstitutional, improper and illegal search of their home and to be falsely arrested without due process of law, in violation of the rights guaranteed to them by the fourth and fourteenth amendments to the Constitution of the United States.

48. As a result of the foregoing, plaintiffs suffered extreme mental anguish, requiring treatment for plaintiff BRENDA JOHNSON; endured public humiliation; lost time from their respective employments and incurred expenses for repairing the damage caused to their home by the individual defendants.

49. By reason of the foregoing, plaintiffs demand damages in an amount sufficient to compensate them for their damages as enumerated hereinabove.

50. WHEREFORE, plaintiffs, BRENDA JOHNSON and STEPHEN JOHNSON, demand judgment against defendants, DETECTIVE JASON BARR, DETECTIVE REBECCA H. ASMAN, DETECTIVE BARRY BROWN, Shield No. 1302, P.O. "JOHN DOES" 1-10 and THE CITY OF NEW YORK as follows:

FIRST CAUSE OF ACTION: an amount sufficient to compensate them for their damages as enumerated hereinabove, and, in addition, seek punitive damages against the individual defendants, both amounts to be determined at the trial of this action; and

SECOND CAUSE OF ACTION: an amount sufficient to compensate them for their damages as enumerated hereinabove, such amount to be determined at the trial of this action.

In addition, plaintiffs demand the costs and disbursements of this action, including their attorney's fees, pursuant to 42 U.S.C. §1988.

Dated: Kew Gardens, New York
January 15, 2015

*Alan D. L.*

ALAN D. LEVINE, ESQ.
Attorney for Plaintiffs
80-02 Kew Gardens Road, Suite 302
Kew Gardens, New York 11415
(718) 793-6363
Our File No. 2273